DONALDSON, Judge.
Affinity Hospital, LLC, d/b/a Trinity Medical Center of Birmingham (“Trinity”), appeals the judgment of the Montgomery Circuit Court upholding a decision of the State Health Planning Development Agency (“SHPDA”) to grant a Certificate of Need (“CON”) to Brookwood Health Services, Inc., d/b/a Brookwood Medical Center (“Brookwood”), to construct a freestanding emergency department (“FED”) in Shelby County.[1] This court has previously addressed this case on the discrete issue whether a lack of notice vitiated the CON granted by SHPDA. See Brookwood Health Servs., Inc. v. Affinity Hosp., LLC, 101 So.3d 1221 (Ala.Civ.App.2012). After this court, in Brookwood, reversed the trial court’s judgment and remanded the action, the trial court affirmed the decision of SHPDA to award the CON to Brookwood. For the reasons stated herein, we affirm the trial court’s judgment.

Facts and Procedural History

The facts, as presented in our prior opinion, are as follows:
“On June 23, 2008, Brookwood Health Services, Inc., d/b/a Brookwood Medical Center (‘Brookwood’), applied to the State Health Planning and Development Agency (‘SHPDA’) for a certificate of need (‘CON’) to build a freestanding emergency department (‘FED’). A FED is a fully functioning emergency department separately located from its hospital. Currently, there are no FEDs in Alabama. Brookwood owns and operates a hospital located in the City of Homewood, in Jefferson County. Brookwood’s proposed FED would be located near Highway 280 in Shelby County, approximately eight miles from Brookwood’s hospital.
“Two hospitals located in Birmingham, Affinity Hospital, LLC, d/b/a Trinity Medical Center of Birmingham (‘Trinity’), and St. Vincent’s Health Systems, Inc. (‘St. Vincent’s’), intervened in opposition to Brookwood’s CON application. Trinity and St. Vincent’s requested a contested-case hearing, and SHPDA appointed an administrative law judge (‘the ALJ’) to conduct the contested-case hearing. Trinity moved the ALJ to dismiss Brookwood’s application on the ground that Brookwood had failed to comply with Rule 410-l-7-.06(l)(a), Ala. Admin. Code (SHPDA) (‘the publication rule’). At the time, the publication rule provided, in pertinent part:
*211 “‘Within thirty (30) calendar days of the filing [of the CON application], the applicant shall also provide proof of publication of notice of the application for two consecutive weeks in a newspaper of general circulation in the area(s) affected, in such size and using such forms as provided by [SHPDA].’[1]
“The ALJ denied Trinity’s motion to dismiss Brookwood’s CON application. The ALJ subsequently held a contested-case hearing regarding the application. Following the hearing, the ALJ issued a recommended order concluding that Brookwood should be granted the CON. SHPDA’s Certificate of Need Review Board (‘the CONRB’) adopted the ALJ’s recommended order and issued the CON to Brookwood.
“Trinity appealed to the Montgomery Circuit Court, pursuant to § 41-22-20, Aa.Code 1975, a part of the Aabama Administrative Procedure Act, § 41-22-1 et seq., Aa.Code 1975. St. Vincent’s did not appeal. On appeal, Trinity made various arguments challenging the merits of the decision to grant the CON to Brookwood. Trinity also argued that Brookwood’s CON application should have been dismissed for failure to comply with the publication rule. On June 3, 2011, the circuit court entered a judgment reversing the CONRB’s decision to grant Brookwood the CON on the ground that Brookwood had failed to comply with the publication rule. In its judgment, the circuit court concluded that the CONRB’s decision was ‘fatally flawed,’ by Brookwood’s noncompliance with the publication rule. Curiously, the circuit court’s judgment also purported to ‘affirm’ the decision ‘with respect to the merits of the [FED] project and the need for the [FED] project.’ However, the judgment in fact reversed the CONRB’s decision to issue the CON. Brookwood appealed to this court, pursuant to § 41-22-20. Trinity filed a cross-appeal, challenging the circuit court’s judgment insofar as it purported to affirm the CONRB’s decision ‘with respect to the merits.’ This court heard oral arguments on July 10, 2012.
"[1] This rule was amended effective September 23, 2011, to remove the publication requirement except for CON applications for drug-abuse centers and psychiatric beds. The above-quoted version of the publication rule is the version applicable in this case.”
Brookwood, 101 So.3d at 1222-23. Ater hearing oral argument, this court “conclude[d] that Trinity was not prejudiced by Brookwood’s noncompliance with the publication rule. That is, Brookwood’s failure to comply with the rule was harmless error.” Id. at 1228. Therefore, we reversed the trial court’s judgment and remanded the case for a decision on the merits.
On remand, the trial court affirmed the decision of SHPDA to award the CON to Brookwood. The trial court’s judgment does not include any specific findings of fact or conclusions of law. An administrative law judge (“ALJ”) made extensive findings of fact on the issues following the contested-case hearing referenced in the prior opinion of this court. Those findings were presented to and considered by SHPDA before it granted the CON. As noted in our prior opinion, Trinity has appealed SHPDA’s decision to award the CON to Brookwood to the trial court, pursuant to § 41-22-20(b), Aa.Code 1975. Trinity filed a timely appeal of the trial court’s judgment affirming SHPDA’s decision to grant the CON to this court pursuant to § 41-22-21, Aa.Code 1975, which has jurisdiction pursuant to § 12-3-10, Aa.Code 1975.

Standard of Review

As we stated in Brookwood, “[t]his court reviews a circuit court’s judgment as to an *212 agency’s decision without a presumption of correctness because the circuit court is in no better position to review the agency’s decision than is this court. Clark v. Fancher, 662 So.2d 258, 261 (Ala.Civ.App.1994).” 101 So.Sd at 1225. The scope of judicial review of an order issued by SHPDA awarding a CON is provided in § 41-22-20(k), Ala.Code 1975:
“Except where judicial review is by trial de novo, the agency order shall be taken as prima facie just and reasonable and the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact, except where otherwise authorized by statute. The court may affirm the agency action or remand the case to the agency for taking additional testimony and evidence or for further proceedings. The court may reverse or modify the decision or grant other appropriate relief from the agency action, equitable or legal, including declaratory relief, if the court finds that the agency action is due to be set aside or modified under standards set forth in appeal or review statutes applicable to that agency or if substantial rights of the petitioner have been prejudiced because the agency action is any one or more of the following:
“(1) In violation of constitutional or statutory provisions;
“(2) In excess of the statutory authority of the agency;
“(3) In violation of any pertinent agency rule;
“(4) Made upon unlawful procedure;
“(5) Affected by other error of law;
“(6) Clearly erroneous in view of the rehable, probative, and substantial evidence on the whole record; or
“(7) Unreasonable, arbitrary, or capricious, or characterized by an abuse of discretion or a clearly unwarranted exercise of discretion.”

Analysis

Trinity raises three issues on appeal: that the award of the CON is not consistent with the State Health Plan (“SHP”); that Brookwood’s proposed FED lacks the potential to be licensed by the Alabama Department of Public Health (“ADPH”); and that the proposed FED lacks “locational appropriateness.” In reviewing Trinity’s arguments, it appears that it urges reversal based on three provisions of § 41-22-20(k):that the decision is in excess of statutory authority (subsection (k)(2)); (3) that the decision violates an agency rule, specifically, Rule 410-1-6-.05, Ala. Admin. Code (SHPDA) (subsection (k)(3)); and that the decision is unreasonable, arbitrary, capricious, or exceeds SHPDA’s discretion (subsection (k)(7)). The scope of our review has been narrowly defined by the legislature, which has declared that “the agency order shall be taken as prima facie just and reasonable and [that] the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact, except where otherwise authorized by statute.” § 41-22-20(k).
Trinity’s first contention is that “a CON can be issued only if it is consistent” with the SHP and that the CON at issue is not consistent with the SHP. The SHP is “[a] comprehensive plan which is prepared triennially and reviewed at least annually and revised as necessary by the Statewide Health Coordinating Council, with the assistance of the State Health Planning and Development Agency, and approved by the Governor.” § 22-21-260(13), Ala.Code 1975. The SHP “shall provide for the development of health programs and resources to assure that quality health services will be available and accessible in a manner which assures continuity of care, *213 at reasonable costs, for all residents of the state.” Id.
Several statutes, as well as administrative regulations adopted pursuant to statutory authority, require SHPDA to evaluate whether a proposed health service is consistent with the SHP before a CON can be issued:
“No institutional health services which are subject to [the CON process] shall be permitted which are inconsistent with the State Health Plan.”
§ 22-21-263(a), Ala.Code 1975.
“The SHPDA, pursuant to the provisions of Section 22-21-274, shall prescribe by rules and regulations the criteria and clarifying definitions for reviews covered by this article. These criteria shall include at least the following:
“(1) Consistency with the appropriate State Health Facility and services plans effective at the time the application was received by the State Agency, which shall include the latest approved revisions of [specified] plans.”
§ 22-21-264, Ala.Code 1975.
“The proposed new institutional health service shall be consistent with the appropriate state health facility and services plans effective at the time the application was received by the state agency....”
Rule 410 — 1—6—.02(1), Ala. Admin. Code (SHPDA).
“Determination of a substantially unmet public requirement for the proposed health care facility, service, or capital expenditure shall be made before approval may be granted. The need shall be consistent with orderly planning within the state and community for furnishing comprehensive health care.”
Rule 410 — 1—6—.05(1), Ala. Admin. Code (SHPDA).
At the time Brookwood applied for the CON and throughout the proceedings below, the SHP did not address FEDs in any manner. Trinity argues that SHPDA could not have found Brookwood’s proposed FED to be consistent with the SHP because the SHP does not address and approve of FEDs or, alternatively, that SHPDA was required to find that the proposed FED was inconsistent with the SHP because it contains no mention of that type of facility. Specifically, Trinity argues that the SHP “does not address [FEDs]. By issuing a CON for a FED, SHPDA acted ‘in violation of [the] statutory provisions’ requiring consistency with the State Health Plan, see, e.g., § 22-21-264.” Trinity argues that SHPDA, in granting the FED CON to Brookwood exceeded its statutory authority and usurped the role of the Statewide Health Coordinating Council (“SHCC”), which is statutorily responsible for promulgating amendments to the SHP in conjunction with SHPDA. In sum, Trinity argues that Brookwood should be required to petition the SHCC to amend the SHP to include specific mention of and approval for FEDs before petitioning for a CON regarding its FED.
We are not directed to any authority that imposes an affirmative duty on the part of Brookwood or any CON petitioner to seek amendments to the SHP through SHCC before petitioning for a CON. Rather, the determination whether a project is “consistent” with the SHP is a determination statutorily committed to SHPDA by § 22-21-264. The legislature could have required an applicant to petition SHCC to determine of whether a project is consistent with the SHP before seeking to obtain a CON, but it did not do so. Therefore, the issue before us is not whether SHPDA has usurped the role of SHCC or obviated the purpose of the SHP, but whether SHPDA, in determinat- *214 ing that a FED is consistent with, or not inconsistent with, the SHP, exceeded its statutory authority or discretion. Trinity argues that because FEDs are not specifically mentioned in the SHP, SHPDA could not proceed to determine whether the proposed project is consistent with the SHP. We hold that the determination of the consistency of a proposed project with the SHP is a matter entrusted to SHPDA. The pertinent statutes do not call upon SHPDA to determine whether a specific service or facility is mentioned and approved in the SHP, only whether such a service or facility is consistent with the SHP. Had the legislature wished to impose such a narrow review of CON petitions, it could have done so. The record includes the detailed “Recommended Findings of Facts and Conclusions of Law” (“the recommendation”) submitted by the ALJ to SHPDA, which SHPDA’s CON Review Board (“CONRB”) adopted in granting the CON. The recommendation directly addresses the issue of the consistency of the proposed FED to the SHP. Specifically, the recommendation states that “the SHP contains no specific provision or need methodology applicable to FEDs or emergency services. It is equally clear, however, that the SHP does not contain any provisions which prohibit, restrict or otherwise place any requirements on FEDs or emergency departments.” The recommendation observes that the project “is not inconsistent with any provision of the SHP.” The recommendation examines the terms “inconsistent” and “consistent” by reference to multiple dictionaries, notes the difference present when an application concerns a specifically governed service or facility, references the expert testimony offered during the course of the proceedings, and cites to the prior precedent and practice of SHPDA in handling petitions for similar projects, such as ambulatory surgical centers and other off-campus hospital departments, as to which SHPDA has granted CONs before their direct inclusion in the SHP. The findings in the recommendation relied upon by SHPDA in granting the FED CON to Brookwood are based on the record presented and demonstrate that the CONRB carefully considered whether the proposed project was consistent with the SHP. The scope of our review, as provided in § 41-22-20(k), specifically states that “the agency order shall be taken as prima facie just and reasonable and the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact, except where otherwise authorized by statute.” “ ‘This court and the trial court must give substantial deference to an agency’s interpretation of its rules and regulations. ‘[A]n agency’s interpretation of its own regulation must stand if it is reasonable, even though it may not appear as reasonable as some other interpretation.’ ’ ” Fowler v. Johnson, 961 So.2d 122, 130 (Ala.2006) (quoting Mobile Cnty. Pers. Bd. v. Tillman, 751 So.2d 517, 518 (Ala.Civ.App.1999)). The findings and conclusions adopted by SHPDA are not unreasonable, arbitrary, capricious, or beyond the statutorily granted authority and discretion of SHPDA. See § 41-22-20(k)(2), (3), and (7).
Trinity next argues that SHPDA “cannot issue a CON for a health care facility without a showing that the proposed facility can be licensed” by ADPH. Statutory provisions and administrative regulations require SHPDA to find that a proposed facility has the “reasonable potential ... to meet licensure standards” before granting a CON. § 22-21-264(4)g, Ala.Code 1975; see also Rule 410-1-6-.05(l)(g), Ala. Admin. Code (SHPDA). ADPH is a separate agency. ADPH, not SHPDA, determines whether to license a health-care facility like the FED. The per *215 tinent statute and regulation require SHPDA to determine the “[r]easonable potential,” not the certainty or even probability, that a proposed facility will meet licen-sure standards. At the time Brookwood applied for the CON for the FED and throughout the proceedings, ADPH had not issued regulations or criteria for licensing FED facilities. Trinity argues that SHPDA could not have determined that Brookwood’s FED had the “reasonable potential” to meet licensure standards unless such standards were in place. Trinity points to a portion of a letter from the deputy general counsel of ADPH to Brook-wood’s counsel dated April 24, 2009, which states: “[S]o there is absolutely no misunderstanding, please be advised that the [ADPH] intends to require that any free standing emergency department ... be licensed by the [ADPH].... The current thinking by [ADPH] staff is that [it] will need to propose new rules for hospital-based free standing emergency departments, which, of course, would be subject to public comment.” The letter does not indicate that ADPH intended to deny li-censure to the proposed FED, should the project come to fruition. Rather, it suggests that there is a reasonable expectation ADPH would use its established procedures to promulgate rules to meet the realities of the new facility. This correspondence notwithstanding, the recommendation from the ALJ provided detailed findings of fact regarding the potential-for-licensure requirement of the pertinent statute and regulation with respect to this particular FED. Those findings include:
“147. The evidence in this case demonstrated a reasonable potential that the [proposed FED] will comply with all applicable licensure rules. Brookwood is currently a licensed hospital, and has been licensed since it began operating in 1973, including for the provision of emergency services....
“148. Further, there are several different ways by which ADPH could license the proposed facility. First, the evidence demonstrates that the 280 ER can be licensed under Brookwood’s hospital license.... The [proposed FED] will be an off-campus department of Brook-wood’s main hospital, operating under the hospital’s general license, just like St. Vincent’s gastroenterology lab at One Nineteen Health & Wellness.
“149. Second, the [proposed FED] could be licensed as a separate hospital facility, yet still operate as part of the hospital and under the hospital’s management.” See Ala. Admin. Code § 420-5-7-.02(3)(b)(A separate license shall be required for each facility when more than one facility is operated under the same management.’)....
“150. In that regard, Brookwood has met with the ADPH on several occasions to discuss the operation of the [proposed FED] and the licensure of FEDs. The ADPH is presently engaged in the process of drafting licensure rules for FEDs, and these rules are expected to be in place by the time Brookwood’s requested CON is granted and the facility is constructed and operational.... ”
(Citations omitted.) Those findings are entitled to deference and this court is not authorized to substitute its judgment as to the findings of SHPDA on this issue. See § 41-22-20(k) (“the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact, except where otherwise authorized by statute”)
Finally, Trinity argues that Brook-wood failed to demonstrate “locational appropriateness” of its proposed FED because Brookwood “has no arrangement which will allow it to purchase the real property where it indicated the FED *216 would be located.”[2] The applicable statute and administrative regulation require that SHPDA consider “[e]vidence of the locational appropriateness of the proposed facility or service such as transportation accessibility, manpower availability, local zoning, environmental health, etc.” § 22-21 — 264(4)f, Ala.Code 1975; See also Rule 410-l-6-.05(l)(f), Ala. Admin. Code (SHPDA). The statute and the regulation do not require proof of ownership or right to acquire property at a particular location, only proof of locational appropriateness of the proposed facility. The ALJ’s recommendation provide a detailed factual analysis supporting the appropriateness of the location, including:
“19. Although the service area is heavily populated, particularly the northwestern portion of the service area, there are presently no ER services in this area. Area residents needing ER services must travel the U.S. Highway 280 corridor (’280 Corridor’) to Brookwood, the closest ER services provider.... During rare times of light traffic, good weather and no accidents, the driving time down 280 from Highway 199, the location of the [proposed FED], to Brookwood is at best 20 minutes.... In ordinary traffic, the drive time is at least 30 minutes or more, and, in heavy traffic, can be an hour. Bad weather or an accident can bring traffic to a halt.
“20. Accordingly, area residents are in need of more readily available ER services .... Most importantly, every year victims of heart attacks, strokes and other emergencies suffer worse outcomes due to delays in obtaining ER services up to and including death, because they could not get to Brookwood’s ER in time. Thus, for some, Brookwood’s [proposed FED] truly will be a matter of life and death.
[[Image here]]
“25. When patients present to the [proposed FED], they will be seen and evaluated at least 30 minutes sooner, and probably more, than if they had traveled down the 280 corridor to the Brookwood ER.... If a patient needs further treatment in the hospital, such as in an operating room, or a cath lab, the [proposed FED] personnel will notify the hospital immediately, so that the operating rooms or cath labs can be readied, and any necessary physicians or after hours call teams assembled, while the patient is en route from the [proposed FED] via ambulance to the hospital, thereby saving valuable time....
[[Image here]]
“33. Currently there are serious problems with access to ER services for heart attack victims in the 280 service area. Once a person leaves Birmingham traveling southeast on U.S. 280, there are no ER services available until Coosa Valley Medical Center (‘Coosa Valley’) in Sylacauga, Alabama, over 40 miles away....
[[Image here]]
“39. The evidence was conclusive that the [proposed FED] will greatly improve emergency services for heart attack victims, and will save lives.... ”
Therefore, Trinity has not shown that SHPDA exceeded its statutory authority by granting the CON or that it rendered an unreasonable, arbitrary, or capricious decision in that regard.

*217
Conclusion

It was within the discretion afforded to SHPDA to determine whether the proposed FED was consistent with the SHP, whether it had the reasonable potential to be licensed, and whether the proposed location was appropriate. Applying the required deferential standard to SHPDA’s decision, the evidence is insufficient to show that SHPDA exceeded its authority, violated any rules, or rendered an unreasonable, arbitrary, or capricious decision by making those determinations in favor of Brookwood and against Trinity. Applying § 41-22-20(k), we have no basis to reverse that decision. Therefore, we affirm the trial court’s judgment affirming SHPDA’s grant of the FED CON to Brookwood.
AFFIRMED.
THOMPSON, P.J., and PITTMAN, J., concur.
THOMAS, J., concurs in the result, with writing.
MOORE, J., concurs in the result, without writing.

. Section 22-21-261, Ala.Code 1975, provides:
"The Legislature of the State of Alabama declares that it is the public policy of the State of Alabama that a certificate of need program be administered in the state to assure that only those health care services and facilities found to be in the public inter-
est shall be offered or developed in the state. It is the purpose of the Legislature in enacting this article to prevent the construction of unnecessary and inappropriate health care facilities through a system of mandatory reviews of new institutional health services, as the same are defined in this article.”

. At the oral argument of this case, Brook-wood agreed that the CON is valid only for the specific location contained in the application it submitted, i.e., the intersection of Highway 280 and 119 in Shelby County. Any other location would, according to the parties, require a separate CON process to be initiated.