MOORE, Judge.
In appeal no. 2120871, Foley Hospital Corporation d/b/a South Baldwin Regional Medical Center (“South Baldwin”) appeals from a judgment of the Montgomery Circuit Court (“the circuit court”) reversing a decision of the Certificate of Need Review Board (“CONRB”) of the Alabama State Health Planning and Development Agency (“SHPDA”) to grant a Certificate of Need (“CON”) to South Baldwin over the objection of Gulf Health Hospitals, Inc., d/b/a Thomas Hospital (“Thomas Hospital”). In appeal no. 2120943, SHPDA and Alva Lambert, the executive director of SHPDA, also appeal from that same judgment. The appeals have been consolidated by this court ex mero motu.

Procedural History

On July 5, 2011, South Baldwin filed with SHPDA a certificate-of-need application for expansion of “its existing cardiac cath services by seeking approval to perform cardiac cath procedures in a second, existing non-cardiac cath procedure room.”[1] South Baldwin asserted that “[t]he second cardiac cath lab is needed as a result of [South Baldwin’s] ‘high utilization’ of its existing one (1) cardiac cath lab and the large and growing volume of procedures performed in the cardiac cath lab.” South Baldwin attached to its application letters of support for the expansion written by several Baldwin County physicians. On August 23, 2011, Thomas Hospital filed with SHPDA its notice of intervention and opposition to South Baldwin’s CON application and its request for a contested case hearing.
On April 16, 2012, the administrative law judge assigned to review the application issued her recommended findings of fact and conclusions of law; the administrative law judge recommended that SHPDA issue the CON. On April 24, 2012, Thomas Hospital filed its exceptions to the recommended findings of fact and conclusions of law entered by the administrative law judge. On May 31, 2012, the CONRB entered an order granting the CON and stating:

“FACTS:

“1. [South Baldwin] seeks an expansion of the cardiac catheterization services it provides in Baldwin County, Alabama. The hospital currently has one cardiac catheteri-zation room and proposes to expand into an existing vascular procedure room, which is used to provide non-cardiac catheterization procedures. Upon approval, this project would result in the establishment of two *928 cardiac catheterization rooms at South Baldwin....
“2. Total costs associated with the project are projected to be $260,000.00, which includes the cost of equipment ($60,000.00) and first year annual operating costs ($200,-000.00).
“3. This project will be funded with $260,000.00 cash on hand.
“4. The primary service area for this project is Baldwin County, Alabama.
“5. The 2004 — 2007 Alabama State Health Plan addresses Cardiac Catheterization Services in Ala. Admin. Code r. 410-2-3-.03 (2011). Planning Policy 3 — Expansion of Service — states that expansion of an existing cardiac catheterization service shall only be approved if an applicant has performed over 1,000 equivalent procedures per unit (80% capacity) for each of the past two years. The facility may then apply for expansion of catheterization services regardless of the utilization of other facilities in the county. “According to the applicant, South Baldwin ... performed procedures in its cardiac catheterization unit equating to 137% of its equivalent procedure capacity in 2009 and 144.7% of its equivalent procedure capacity in 2010. The applicant further states that between 2006 and 2010, total procedure levels have risen by 25.5%.
“6. Eight (8) letters were received in support of the application. A Notice of Intervention and Opposition and Contested Case Hearing Request was filed by ... Thomas Hospital on August 23, 2011. Following the Contested Case Hearing, the assigned Administrative Law Judge issued Recommended Findings of Fact and Conclusions of Law (the ‘Recommended Order’) on April 16, 2012, recommending a grant of [South Baldwin’s] application. Thomas Hospital timely filed exceptions to the [Administrative Law Judge’s] Recommended Order on April 24, 2012, and both parties were given an opportunity to address the [CONRB] at the public hearing held to consider the application on May 16, 2012.
“7. Baldwin County had an estimated population of 184,395 in the year 2010. By 2012, the Center for Business and Economic Research (‘CBER’) at the University of Alabama estimates that Baldwin County’s population will be 193,110, for an overall increase of 4.8%.
“8. Upon consideration of the totality of the evidence presented, the [CONRB] concludes that the proposal is financially feasible. Further, the [CONRB] concludes that the applicant is an ‘appropriate applicant,’ as defined by the applicable regulations.
“9. The [CONRB] concludes that the applicant has demonstrated a substantially unmet community need for the proposal.
“Based on the foregoing factual findings and representations, the evidence of record, and pursuant to Ala.Code § 22-21-266 (1975 as amended), the [CONRB] finds the following:
“(1) that the application is consistent with, the current State Health Plan;
“(2) that there are no less costly, more efficient, or more appropriate alternatives to the services available and that the development of such *929 alternatives has been studied and found not practicable;
“(3) that similar services to those proposed are being used in an appropriate and efficient manner;
“(4) that in the case of new construction, alternatives have been considered and implemented to the extent possible; and that patients will experience serious problems in obtaining care of the type proposed in the absence of the proposed expansion of cardiac catheterization.
“(5) that patients will experience serious problems in obtaining care of the type proposed in the absence of the proposed expansion of cardiac catheterization services.
“Accordingly, based on the foregoing, separately and severally, and upon the totality of the evidence presented, by vote of the [CONRB] on May 16, 2012, Project Number AL 2011-033 is hereby APPROVED.”
On, June 22, 2012, Thomas Hospital filed its notice of appeal with SHPDA. On July 20, 2012, Thomas Hospital also filed a petition for judicial review in the circuit court.
On August 21, 2012, SHPDA and Alva Lambert, in only his official capacity as the executive director of SHPDA, filed an answer to the petition for judicial review. On August 23, 2012, South Baldwin answered the petition for judicial review.
On June 25, 2013, the circuit court entered a judgment stating, in pertinent part:
“Thomas Hospital contends that Rule 410-2-3-.03 unambiguously requires South Baldwin to present substantial evidence that its existing cardiac catheteri-zation laboratory operated at 80% capacity for each of the two years prior to the filing of the CON application, and that such evidence must consist of proof that 1,000 or more cardiac catheterizations or procedure equivalents were performed in such unit. The parties concede that a cardiac catheterization consists of a left heart catheterization, right heart cathet-erization, right and left heart catheteri-zation, and also includes a Pacemaker implant according to South Baldwin. Thomas’ Hospital further argues that a ‘procedure equivalent’ means a procedure equivalent to a cardiac catheterization and/or a procedure reported on a per session basis and consisting of at least 1.5 hours utilization time.
“South Baldwin filed its CON application on July [5], 2011. Therefore, the two years preceding the filing of the application is the relevant time period for review. It is undisputed that during this period South Baldwin performed approximately 450 cardiac catheterization procedures annually or, including Pacemaker implants, approximately 550 procedures. Using either number South Baldwin performed on average only two cardiac catheterization procedures per day. SHPDA’s ruling does not expressly state that South Baldwin’s existing cardiac catheterization laboratory operated at 80% capacity during the review period. Further, the Recommended Order on Contested Case Hearing, issued by the Administrative Law Judge who conducted the evidentiary hearing, does not make this finding. Thomas Hospital argues that SHPDA did not make this required finding because it is undisputed that the cardiac catheterization procedures and procedure equivalents identified in South Baldwin’s CON application were performed either in the existing cardiac catheterization laboratory or in a special procedures room located elsewhere in the hospital, and that there is no evidence that 1,000 procedures were actually performed during the review period in the catheterization unit at is *930 sue. The Court has reviewed the record and agrees that there is no evidence of the exact number of procedures performed in the cardiac catheterization laboratory at issue and that without such evidence there can be no finding that: 1) South Baldwin’s existing cardiac catheterization laboratory operated at 80% capacity during the review period, and 2) its CON application complies with Rule 410-2-3-.0B of the State Health Plan. As already stated, SHPDA did not make the required finding that South Baldwin’s cardiac catheterization laboratory operated at 80% capacity during the review period, and there is no evidence of record to support such a finding.
“Thomas Hospital further argues that SHPDA erred in accepting, without proof, that the procedures reported in South Baldwin’s CON application were procedure equivalents under Rule 410-2-B-.03. Thomas Hospital contends that a ‘procedure equivalent’ means that the procedure must have some equivalent relation to a cardiac catheterization and there is no evidence that the other procedures referenced in South Baldwin’s CON application are equivalent to a cardiac catheterization. In addition, or in the alternative, Thomas Hospital contends that there is no evidence that the procedures equivalent reported by South Baldwin actually utilized 1.5 hours of utilization time as referenced in Rule 410-2-3-.03, and that South Baldwin has reported such procedures on a .‘per person’ instead of a ‘per session’ basis as also provided by Rule 410-2-3-.03. According to testimony in the record, South Baldwin identified 698 other procedures that were performed on just 426 patients, for an average of 1.4 procedures per patient. Thomas Hospital contends that a procedure equivalent consists of a unit of time during one session, and that merely counting the number of procedures performed on the same patient during a session is not evidence of a procedure equivalent.
“The Court agrees and holds that in order to satisfy Rule 410-2-3-.03, there must be substantial evidence that an equivalent procedure is equivalent to a cardiac catheterization or that the equivalent procedure is reported on a per session basis and utilized 1.5 hours of utilization time. There is no evidence in the record to support a finding that South Baldwin has satisfied any of these requirements. Therefore, the Court concludes that SHPDA, as a matter of law, erred in finding that South Baldwin’s CON Application satisfied Rule 410-2-3-.03 of the State Health Plan. Therefore, in granting South Baldwin a CON for an additional cardiac catheteri-zation laboratory, SHPDA has made an unreasonable and erroneous application of Rule 410-2-3-.03, exceeded its statutory authority, and issued a ruling that is not supported by substantial evidence. Accordingly, SHPDA’s ruling is not entitled to deference as a matter of law and is due to be set aside and reversed.
“In addition, the Court agrees with Thomas Hospital that there is no evidence of a substantial community need for an additional cardiac catheterization laboratory at South Baldwin. According to the record, South Baldwin performs approximately two cardiac catheterization procedures per day and future demand for cardiac catheterization procedures is projected to increase by less than one procedure per week. Furthermore, there is no evidence that allowing South Baldwin a [CON] for an additional cardiac catheterization laboratory is an appropriate alternative. Based upon the undisputed evidence, the majority of procedures performed at South Baldwin *931 during the review period were non-cardiac catheterization procedures that can be performed in South Baldwin’s special procedures room, which is used on average only three days a week. Absent the non-cardiac catheterization procedures, the capacity of the existing cardiac cath-eterization laboratory to perform cardiac catheterizations would increase by almost 50%. The Court also agrees that there is little to no evidence that patients at South Baldwin will experience any serious problems in obtaining cardiac catheterization services unless South Baldwin is granted a CON for an additional cardiac catheterization laboratory.
“Accordingly, for all the reasons expressed herein, the Court concludes that SHPDA’s ruling granting South Baldwin a CON for an additional cardiac cathet-erization laboratory is made in excess of SHPDA’s authority; is unsupported by the record; is arbitrary and capricious; and is made in error of law. Therefore, it is ORDERED and DECREED that SHPDA’s ruling is REVERSED, and judgment is hereby entered in favor of ... Thomas Hospital.”
On July 12, 2018, South Baldwin filed its notice of appeal to this court; SHPDA and Lambert filed their notice of appeal to this court on July 22, 2013.

Standard of Review

“This court reviews a circuit court’s judgment as to an agency’s decision without a presumption of correctness because the circuit court is in no better position to review the agency’s decision than is this court.” Brookwood Health Servs., Inc. v. Affinity Hosp., LLC, 101 So.3d 1221,1225 (Ala.Civ.App.2012).
“The scope of judicial review of an order issued by SHPDA awarding a CON is provided in § 41-22-20(k), Ala.Code 1975:
“ ‘Except where judicial review is by trial de novo, the agency order shall be taken as prima facie just and reasonable and the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact, except where otherwise authorized by statute. The court may affirm the agency action or remand the case to the agency for taking additional testimony and evidence or for further proceedings. The court may reverse or modify the decision or grant other appropriate relief from the agency action, equitable or legal, including declaratory relief, if the court finds that the agency action is due to be set aside or modified under standards set forth in appeal or review statutes applicable to that agency or if substantial rights of the petitioner have been prejudiced because the agency action is any one or more of the following:
“ ‘(1) In violation of constitutional or statutory provisions;
“ ‘(2) In excess of the statutory authority of the agency;
“ ‘(3) In violation of any pertinent agency rule;
“ ‘(4) Made upon unlawful procedure;
“ ‘(5) Affected by other error of law;
“ ‘(6) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
“‘(7) Unreasonable, arbitrary, or capricious, or characterized by an abuse of discretion or a clearly unwarranted exercise of discretion.’ ”
Affinity Hosp., LLC v. Brookwood Health Servs., Inc., 143 So.3d 208, 212 (Ala.Civ.App.2013). “ ‘ “This court and the trial court must give substantial deference to an agency’s interpretation of its rules and *932 regulations. ‘[A]n agency’s interpretation of its own regulation must stand if it is reasonable, even though it may not appear as reasonable as some other interpretation.’ ” ’ ” Id. at 214 (quoting Fowler v. Johnson, 961 So.2d 122, 130 (Ala.2006), quoting in turn Mobile Cnty. Pers. Bd. v. Tillman, 751 So.2d 517, 518 (Ala.Civ.App.1999)).

Discussion

On appeal, South Baldwin, SHPDA, and Lambert (hereinafter referred to collectively as “the appellants”) argue that the circuit court erred in reversing the decision of the CONRB, which had granted a CON to South Baldwin.
“The Alabama Legislature has enacted a statutory scheme to provide for ‘health care services and facilities found to be in the public interest.’ Section 22-21-261, Ala.Code 1975, states:
‘“The Legislature of the State of Alabama declares that it is the public policy of the State of Alabama that a certificate of need program be administered in the state to assure that only those health care services and facilities found to be in the public interest shall be offered or developed in the state. It is the purpose of the Legislature in enacting this article to prevent the construction of unnecessary and inappropriate health care facilities through a system of mandatory reviews of new institutional health services, as the same are defined in this article.’
“To effectuate the aforesaid purpose, the legislature enacted Article 9, ‘Control and Regulation of Development of Certain Health Care Facilities,’ of Title 22, Chapter 21, of the Alabama Code, codified at §§ 22-21-260 to 22-21-278, Ala.Code 1975. Article 9 gives the Statewide Health Coordinating Council (‘SHCC’) (see § 22-4-7 and -8, [Ala. Code 1975,] creating the SHCC) responsibility for preparing and periodically revising the State Health Plan (‘SHP’), a comprehensive catalogue of the healthcare needs of the State. The SHP ‘provide[s] for the development of health programs and resources to assure that quality health services will be available and accessible in a manner which assures continuity of care, at reasonable costs, for all residents of the state.’ Ala. Code 1975, § 22-21-260(13). See Ala. Code 1975, § 22-21-260(13) and (15); Ala. Admin. Code (SHPDA) Rule 410-2-1-02.
“To aid in the administration of the State’s health-planning law, the legislature also created SHPDA, a body composed of three consumers, three healthcare providers, and three representatives appointed by the governor. Ala. Code 1975, § 22-21-260(14). Under the state-health-planning laws adopted by our legislature, health-care providers must apply to 'SHPDA for a certificate of need (sometimes referred to herein as a ‘CON’) before offering a new institutional health service, and that service must be consistent with the SHP. Ala. Code 1975, §§ 22-21-263(a), -265(a), and -267.”
Ex Parte STV One Nineteen Senior Living, LLC, [Ms. 1110588, Feb. 28, 2014] — So.3d —,— (Ala.2014).
Rule 410-2-3-.03, Ala. Admin. Code (SHPDA), provides, in pertinent part:
“(1) Fixed-Based Cardiac Catheterization Laboratories
“(a) Discussion
“1. During the past four decades, an evolution in cardiac catheterization has taken place. The role of the cardiac catheterization laboratory has progressed from study of cardiac function and anatomy for *933 purposes of diagnosis to evaluation of candidates for surgery and finally to providing catheter-based, nonsurgical interventional treatment. This progress has stimulated an increase in demand for cardiac cathet-erization services.
“2. From about 1982 to the present, there has been an unprecedented proliferation of cardiac catheteri-zation services, which have now been expanded to a wider group of patients and diseases. The increase in patients and laboratories has been stimulated by the development of nonsurgical catheterization laboratory-based therapeutic procedures for palliation of both stable and unstable ischemic heart disease as well as selected valvular and congenital heart diseases, arrhythmias, and other problems. Many noncar-diac diagnostic and therapeutic vascular procedures are now being performed in cardiac catheterization laboratory settings, but this area is still evolving. As newer cardiac diagnostic and treatment modalities are developed, it is highly likely that the role of cardiac catheterization will continue to evolve.
“3. Fixed-based cardiac catheteri-zation services are the only acceptable method for providing cardiac catheterization services to the people in Alabama.
“4. For purposes of this section, a cardiac catheterization ‘procedure equivalent’ is defined as a unit of measure which reflects the relative average length of time one patient spends in one session in a cardiac catheterization laboratory. One procedure equivalent equals 1.5 hours utilization time.
“(b) Planning Policies
“1. Planning Policy. Diagnostic catheterizations shall be weighed as 1.0 equivalents, while therapeutic/interventional catheterizations (Percutaneous Transluminal Coronary Angioplasty (PTCA), directional coronary atherectomy, rotational coronary atherectomy, intracoronary stent deployment, and intracoronary fibrinolysis, cardiac valvuloplasty, and similarly complex therapeutic procedures) and pediatric catheterizations shall be weighed as 2.0 equivalents. Electrophysiology shall be weighed as 3.0 equivalents for diagnostic and 4.0 equivalents for therapeutic procedures. For multi-purpose rooms, each special procedure which is not a cardiac catheterization procedure, performed in such rooms shall be weighed as one equivalent.
[[Image here]]
“3. Planning Policy — Expansion of Existing Service. Expansion of an existing cardiac catheterization service shall only be approved if:
“(i) If an applicant has performed 1,000 equivalent procedures per unit (80% of capacity) for each of the past two years, the facility may apply for expansion of catheterization services regardless of the utilization of other facilities in the county.”
A. Compliance with Rule 410-2-3-.03(1)(b)3.(i)
The appellants specifically argue that the circuit court erred in concluding that South Baldwin had not complied with Rule 410-2-3-.03(1)(b)3.(i). The circuit court concluded (1) that “SHPDA did not make the required finding that South Baldwin’s cardiac'catheterization laboratory operated at 80% capacity during the review period,” *934 and that there was “no evidence of record to support such a finding,” and (2) that there was not “substantial evidence that [South Baldwin’s stated] equivalent procedure[s] [are] equivalent to a cardiac cathet-erization or that the equivalent procedure[s were] reported on a per session basis and utilized 1.5 hours of utilization time.” The circuit court found that SHPDA’s decision was “[i]n excess of the statutory authority of the agency,” was “[a]ffected by' [an] error of law,” was “[c]learly erroneous in view of the reliable, probative, and substantial evidence on the whole record,” and was “[u]nreasonable, arbitrary, or capricious, or characterized by an abuse of discretion or a clearly unwarranted exercise of discretion.” § 41-22-20(k)(2), (5), (6), and (7), Ala.Code 1975.
We initially note that, although Rule 410-2-3-.03(1)(a)4., provides that “[o]ne procedure equivalent equals 1.5 hours utilization time,” Rule 410-2-3-.03(1)(b)1. sets forth a simplified way to count those procedures; the portions of that rule applicable to this case state that “[diagnostic catheterizations shall be weighed as 1.0 equivalents” and that, “[f]or multi-purpose rooms, each special procedure which is not a cardiac catheterization procedure, performed in such rooms shall be weighed as one equivalent.” David Godfrey, the director of South Baldwin’s heart center, testified that all the cardiac procedures done in South Baldwin’s multipurpose room — the room in which both cardiac catheterizations and vascular catheteriza-tions were performed — were diagnostic catheterizations. Thus, pursuant to Rule 410-2-3-.03(1)(b)1., all those procedures would be weighed as 1.0 equivalents. All the other procedures done in the multipurpose room would also be weighed as 1.0 equivalents pursuant to 410-2-3-.03(1)(b)1. South Baldwin presented testimonial and documentary evidence indicating that, in its multipurpose room, it had performed 1,120 procedure equivalents between July 2009 and June 2010 and 1,110 procedure equivalents between July 2010 and June 2011. Therefore, based on that evidence, the number of procedure equivalents performed in South Baldwin’s multipurpose room for each of the previous two years exceeded 1,000 (80% capacity), as set forth in Rule 410-2-3-.03(1)(b)3.(i).
Neither this court nor the circuit court is permitted to “substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.” § 41-22-20(k). Having found substantial evidence in the record indicating that the number of procedure equivalents performed in South Baldwin’s multipurpose room exceeded 1,000 (80% capacity) for each of the preceding two years, as set forth in Rule 410-2-3-.03(1)(b)3.(i), we conclude that the CONRB correctly determined that South Baldwin had met the requirements of Rule 410-2-3-.03(1)(b)3.(i) and that the circuit court therefore erred in reweighing the evidence in this case.
Thomas Hospital also argues that South Baldwin should not have counted multiple procedures per patient. We note, however, that Rule 410-2-3-.03(1)(b)3.(i) refers to the number of procedures performed and not the number of patients on whom procedures were performed. Therefore, we cannot conclude that the CONRB improperly interpreted that rule in allowing South Baldwin to count multiple procedures per patient. See Fowler, 961 So.2d at 130 (“' “[A]n agency’s interpretation of its own regulation must stand if it is reasonable.” ’ ” (quoting Tillman, 751 So.2d at 518)).
Based on the foregoing, we cannot hold that the CONRB’s conclusion that the requirements of Rule 410-2-3-.03 were met was “[i]n excess of the statutory authority of the agency,” was “[a]ffected by [an] *935 error of law,” was “[e]learly erroneous in view of the reliable, probative, and substantial evidence on the whole record,” or was “[u]nreasonable, arbitrary, or capricious, or characterized by an abuse of discretion or a clearly unwarranted exercise of discretion.” § 41-22-20(k)(2), (5), (6), and (7).
B. Other Issues
The appellants also argue that the circuit court improperly reweighed the evidence in concluding that “there is no evidence of a substantial community need for an additional cardiac catheterization laboratory at South Baldwin,” that “there is no evidence that allowing South Baldwin a [CON] for an additional cardiac catheteri-zation laboratory is an appropriate alternative,” and that “there is little to no evidence that patients at South Baldwin will experience any serious problems in obtaining cardiac catheterization services unless South Baldwin is granted a CON for an additional cardiac catheterization laboratory”
With regard to the evidence of community need, Godfrey testified that the physicians that performed cardiac-catheterization procedures at South Baldwin’s facility needed and wanted access to a second CON-approved cardiac-catheterization laboratory at that facility. Godfrey testified that patients had already been subject to a delay of medical care because of the lack of a second CON-approved cardiac-cathet-erization laboratory. Marty Chafin, a health-care consultant who testified on behalf of South Baldwin, testified that the population of Baldwin County and, specifically, the elderly population of the county, which comprises most of the patients needing catheterization procedures, was projected to increase substantially, which would further contribute to the already present need for a second cardiac-cathet-erization laboratory. Based on the testimony of Godfrey and Chafin, we conclude that there was substantial evidence from which the CONRB could find that there was a community need for a second cardiac-catheterization laboratory at South Baldwin’s facility.
With regard to whether granting the CON was an appropriate alternative, the circuit court found that “the majority of procedures performed at South Baldwin during the review period were non-cardiac catheterization procedures that could be performed in South Baldwin’s special procedures room[, the room into which South Baldwin was seeking to expand its cardiac-catheterization services], which is used on average only three days a week [and that,] [a]bsent the non-cardiac catheterization procedures, the capacity of the existing cardiac catheterization laboratory to perform cardiac catheterizations would increase by almost 50%.” However, Godfrey testified that moving all the noncardiac-catheterization procedures to the special-procedures room is not a viable alternative because there are three interventional cardiologists who perform both cardiac work and vascular procedures on the same days and that, by making those cardiologists perform their cardiac-catheterization procedures in the multipurpose room and their other procedures in the special-procedures room, both rooms would be unavailable for other physicians to use. Furthermore, Chafin testified that all other options had been considered and rejected. Based on the foregoing, we conclude that the CONRB properly concluded that there was substantial evidence indicating that the approval of the CON was an appropriate alternative.
With regard to whether there is substantial evidence indicating that patients at South Baldwin’s facility will experience any serious problems in obtaining cardiac-catheterization services unless *936 South Baldwin is granted a CON for an additional cardiac-catheterization laboratory, we note that Godfrey testified that the absence of a second cardiac-catheteri-zation laboratory had caused problems because patients have experienced significant delays in having their cardiac-cath-eterization procedures performed, especially when emergency procedures are necessary. He testified that, on the day of a patient’s procedure, that patient is not allowed to have food, water, or certain medications and that delaying the procedure can cause certain patients to become hypoglycemic. He testified also that the absence of a second cardiac-catheterization laboratory has presented South Baldwin with a safety issue. Based on the foregoing, we conclude that the CONRB properly concluded that there was substantial evidence indicating that patients at South Baldwin’s facility will experience serious problems in obtaining cardiac-catheterization services unless South Baldwin is granted a CON.
As stated previously, neither this court nor the circuit court is permitted to “substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.” § 41-22-20(k). Having found substantial evidence in the record indicating that there is substantial community need for an additional cardiac-catheterization laboratory at South Baldwin’s facility, that the approval of the CON application is an appropriate alternative, and that, absent the approval of the CON application, patients at South Baldwin’s facility will experience serious problems in obtaining cardiac-catheterization services, we conclude that the circuit court erred in reweighing the evidence in this case.

Conclusion

Based on the foregoing, we reverse the judgment of the circuit court overturning the CONRB’s decision to issue the CON to South Baldwin, and we remand this cause to the circuit court for it to reinstate the CONRB’s decision.
2120871 — REVERSED AND REMANDED WITH INSTRUCTIONS.
2120943 — REVERSED AND REMANDED WITH INSTRUCTIONS.
THOMPSON, P.J., and PITTMAN, THOMAS, and DONALDSON, JJ., concur.

. As explained infra, the room in which South Baldwin already had approval to perform cardiac catheterizations is sometimes referred to as the "multipurpose room”; the room in which South Baldwin sought approval to perform cardiac catheterizations is sometimes referred to as the "special-procedures room.” The evidence indicated that South Baldwin used the special-procedures room for noncar-diac diagnostic and therapeutic catheteriza-tions and pain procedures. Additionally, South Baldwin sometimes used the special-procedures room for cardiac procedures when the multipurpose room was unavailable; however, South Baldwin never had two cardiac procedures being performed simultaneously because it had approval for only one cardiac-catheterization room. Only diagnostic cardiac catheterizations are performed at South Baldwin's facility; therapeutic cardiac catheterizations are not performed there.